UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ARMANDO MORA-ISABELLES, | ) | CASE NO.   C07-0392-JLR |
| | ) | (CR04-092-JLR) |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Armando Mora-Isabelles is a federal prisoner who is currently incarcerated at the United States Medical Center Federal Penitentiary in Springfield, Missouri. He has filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct the sentence imposed upon him following his 2004 convictions on federal charges of distributing heroin, distributing cocaine, and possessing heroin with intent to distribute. Respondent has filed a response to petitioner's § 2255 motion. After careful consideration of petitioner's motion, the briefs of the parties, and the balance of the record, this Court concludes that petitioner's §2255 motion should be denied.

REPORT AND RECOMMENDATION
PAGE -1

## FACTS

Federal agents began their investigation into petitioner's drug trafficking activities in November 2003, following their arrest on drugs charges of an individual named Carlos Torrez. (CR04-92-JLR, Dkt. No. 108 at 52.) Torrez was offered an opportunity to work with federal authorities to identify and provide information about the source of supply for his drugs. (*Id.*, Dkt. No. 108 at 52.) Torrez agreed to cooperate with law enforcement and signed a cooperation agreement. (*Id.*, Dkt. No. 108 at 53-54.) Torrez identified his source for narcotics as petitioner whom he had met while both were incarcerated on state drug trafficking charges in 1997. (*Id.*, Dkt. No. 108 at 52 and Dkt. No. 109 at 6-8.)

Torrez testified at trial that petitioner contacted him in late 2000 or early 2001, after petitioner's release from state prison, and the two entered into a drug dealing relationship. (*Id.*, Dkt. No. 109 at 11-13.) According to Torrez, he would see petitioner approximately every other day and purchase quantities of heroin and cocaine. (*Id.*, Dkt. No. 109 at 14.) The relationship continued in this fashion for approximately a year and a half. (*Id.*) On one occasion, Torrez purchased a kilogram of heroin from petitioner. (*Id.*, Dkt. No. 109 at 14-15.) Typically, however, he would purchase smaller quantities of heroin. (*Id.*) Torrez testified that he also purchased kilogram quantities of cocaine from petitioner on approximately 20 to 25 occasions. (*Id.*, Dkt. No. 109 at 16.)

During the time that Torrez was purchasing drugs from petitioner, he was also supplying petitioner with pain pills for his bad back. (*Id.*, Dkt. No. 109 at 19.) According to Torrez, he began supplying petitioner with pain pills shortly after the two re-established contact in late 2000 or early 2001, and he would get the pills for petitioner about once every two weeks. (*Id.*, Dkt.

01 No. 109 at 18-19.) Torrez testified that he stopped providing petitioner with pain pills in

02 approximately November 2002, because petitioner had found another source of supply for the

03 pills. (CR04-92-JLR, Dkt. No. 109 at 20.)

04       Petitioner, during his trial testimony, confirmed that he met Torrez while both were

05 confined in state prison and that they re-established contact in approximately May 2000, after

06 petitioner was released from prison. (*Id*., Dkt. No. 110 at 52-55.) Petitioner also confirmed that

07 he saw Torrez frequently and that Torrez provided him with OxyContin pills. (*Id*., Dkt. No. 110

08 at 57.) Petitioner testified, however, that Torrez stopped providing him the OxyContin pills in

09 November 2003, and not in November 2002, as Torrez testified. (*Id*., Dkt. No. 110 at 57-58.)

10 Petitioner denied that he ever got the OxyContin pills from anybody besides Torrez. (*Id*.)

11 Petitioner testified that he had become addicted to the OxyContin and that, in December 2003, he

12 was forced to supply Torrez with drugs in order to continue receiving the pain pills from Torrez.

13 (*See id*. at 59-62 and 79-82.) According to petitioner, he never supplied any drugs to Torrez prior

14 to December 2003. (*Id*. Dkt. No. 110 at 59-60.)

15       It was in December 2003, that Torrez made his purchase of drugs from petitioner while

16 acting under the supervision of federal agents. ( *See id*., Dkt. No. 108 at 58-62.) Between

17 December 2003 and February 2004, petitioner supplied Torrez with drugs on four occasions.

18 Petitioner was arrested on February 25, 2004, after delivering almost three kilograms of cocaine

19 to Torrez. (*Id*., Dkt. No. 109 at 104.)

20       Following petitioner's arrest, federal agents executed a search warrant on petitioner's

21 residence. During the search, agents found a total of 316.3 grams of heroin, two digital scales,

22 a white powdered substance believed to be a cutting agent for cocaine, a .380 caliber handgun,

REPORT AND RECOMMENDATION
PAGE -3

01 and an AR-15 assault rifle. (CR04-92-JLR, Dkt. No. 108 at 80-89.) Petitioner testified that he

02 had acquired the weapons because he was fearful of Torrez. (CR04-92-JLR, Dtk. No. 110 at 63

03 and 86-89.) Petitioner admitted, however, that he had never taken the firearms to any of their drug

04 deals. (*Id.*, Dkt. No. 110 at 86-89.)

05       On March 3, 2004, the grand jury returned an indictment charging petitioner with one

06 count of distributing heroin and one count of conspiring to distribute cocaine. (CR04-92-JLR,

07 Dkt. No. 12.) A superseding indictment was returned on August 5, 2004, charging petitioner with

08 two counts of distributing heroin, two counts of distributing cocaine, one count of possessing

09 heroin with intent to distribute, one count of being a felon in possession of a firearm, and two

10 counts of carrying a firearm during and in relation to a drug trafficking crime. (*Id.*, Dkt. No. 51.)

11       Petitioner proceeded to trial in November 2004. At the close of the evidence, the parties

12 stipulated to the dismissal of the count charging petitioner with being a felon in possession of a

13 firearm. (*Id.*, Dkt. No. 88.) On November 8, 2004, the jury returned a verdict convicting

14 petitioner on all of the remaining counts. (*Id.*, Dkt. Nos. 88 and 91.) On December 1, 2004, the

15 trial court granted a defense motion for acquittal on the two counts charging petitioner with

16 carrying a firearm during and in relation to a drug trafficking crime. (*Id.*, Dkt. Nos. 94.) On

17 March 7, 2005, petitioner was sentenced to a term of 190 months confinement. (*Id.*, Dkt. Nos.

18 100 and 101.)

19 PROCEDURAL HISTORY

20       Petitioner appealed his judgment to the United States Court of Appeals for the Ninth

21 Circuit. Petitioner argued on appeal that: (1) the government improperly vouched for a witness

22 during closing argument; (2) petitioner was denied his right to testify when the trial court limited

petitioner's ability to testify concerning his fear of Carlos Torrez; and, (3) petitioner was denied his right to confront witnesses against him when the trial court limited the cross-examination of Torrez concerning the facts of his prior arrest and the potential term of imprisonment avoided by Torrez by entering into the cooperation agreement. (*See* Dkt. No. 8, Ex. 3.) Petitioner's judgment was affirmed on March 9, 2006. *See United States v. Mora-Isabelles*, 2006 WL 561245 (C.A.9).

On March 12, 2007, petitioner filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Petitioner identifies two grounds for relief in his motion: (1) trial counsel rendered ineffective assistance during trial and at sentencing; and, (2) the trial judge denied petitioner his right to due process and to a fair trial. (*See* Dkt. No. 1 at 4 and 5.)

The government has filed a response to petitioner's motion in which it argues that petitioner's ineffective assistance of counsel claims are without merit and that petitioner's challenges to the trial judge's rulings cannot be considered here because the issues were addressed by the Court of Appeals on direct appeal.

## DISCUSSION

### Ineffective Assistance of Counsel

Petitioner asserts in his first ground for relief that his trial counsel rendered ineffective assistance when he failed to establish in his opening argument that petitioner feared the government's confidential source, Carlos Torrez. Petitioner further asserts that counsel rendered ineffective assistance when he failed to seek a downward departure at sentencing for acceptance of responsibility and for sentencing entrapment.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 691-92.

When considering the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland*, 466 U.S. at 693. The petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*.

### *1.   Opening Statement*

Petitioner asserts that his trial counsel rendered ineffective assistance when he failed to establish in his opening statement that petitioner feared Carlos Torrez. Petitioner argues that his entrapment defense depended on counsel's ability to establish both that petitioner feared Torrez,

and that petitioner depended upon Torrez to supply him with OxyContin for his chronic back pain.

In his opening statement, petitioner's counsel argued that petitioner began selling cocaine and heroin to Torrez only after Torrez began to apply pressure to petitioner in November 2003 and threatened to stop providing petitioner with the pain medication unless petitioner provided him with drugs to sell. Counsel did not argue that petitioner sold narcotics to Torrez because petitioner was afraid of Torrez.

Petitioner is of the belief that counsel's failure to incorporate the "fear" argument into his opening statement caused the court to disallow questioning on this topic during petitioner's direct examination and, ultimately precluded petitioner from establishing a critical element of his defense. However, it is clear from the record that petitioner's counsel was permitted to inquire into petitioner's fear of Torrez on direct examination. (*See* CR04-92-JLR, Dkt. No. 110 at 60.) It is also clear from the record that the limitations placed on petitioner's testimony regarding his fear of Torrez were not attributable to counsel's failure to raise the issue during opening statements but were, instead, attributable to the fact that some of the testimony sought to be admitted constituted inadmissible hearsay. (*Id*., Dkt. No. 110 at 60-61 and 63.)

Petitioner makes no showing that counsel's performance during opening statements in any way precluded him from presenting evidence on, or arguing, petitioner's entrapment defense. Accordingly, petitioner's § 2255 motion should be denied with respect to the first portion of his ineffective assistance of counsel claim.

**2.** ***Sentencing***

Petitioner also asserts that his counsel rendered ineffective assistance at sentencing when he failed to seek a downward departure for petitioner based upon acceptance of responsibility and

sentencing entrapment. In fact, the record reflects that counsel made these arguments in his original and supplemental sentencing memoranda and during his oral arguments at the sentencing hearing. (CR04-92-JLR, Dkt. Nos. 96, 99 and 113.) That counsel was unsuccessful in obtaining the result sought by petitioner does not render counsel's performance deficient. Accordingly, petitioner's § 2255 motion should be denied with respect to the second part of his ineffective assistance of counsel claim.

### Trial Court Error

Petitioner asserts in his second ground for relief that the trial court denied him his right to due process and to a fair trial when it denied his motion for a mistrial after the government vouched for a witness during closing argument, when it limited petitioner's testimony regarding his fear of Carlos Torrez, and when it limited the cross-examination of Torrez concerning the facts of his prior arrest which led to his cooperation with federal agents in the investigation of petitioner.

The government argues that this Court is precluded from considering these issues in these proceedings because the Ninth Circuit already addressed these issues on direct appeal. The government is correct. Claims that have already been raised on direct appeal may not be raised in subsequent § 2255 motions absent a showing of manifest injustice or a change in law. *Polizzi v. United States,* 550 F.2d 1133, 1135 (9th Cir. 1976) (citing *Kaufman v. United States*, 394 U.S. 217, 226-27 & n.8 (1969). Petitioner makes no such showing here. Accordingly, petitioner's § 2255 motion should be denied with respect to petitioner's claims of trial court error.

/ / /

/ / /

## CONCLUSION

As none of petitioner's claims has merit, petitioner's § 2255 motion should be denied. A proposed Order accompanies this Report and Recommendation.

DATED this 26th day of October, 2007.

*Mary Alice Theiler*
Mary Alice Theiler
United States Magistrate Judge